UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDITHA DAMASCO,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. C17-641 RSM

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on Defendant United States of America's Motion for Summary Judgment on Plaintiff Editha Damasco's claims under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. Dkt. #17. Neither party has requested oral argument and the Court does not find oral argument necessary to resolve Defendant's Motion for Summary Judgment. Having considered the parties' briefing and the relevant record, and for the reasons set forth below, the Court DENIES Defendant's Motion for Summary Judgment.

## II. BACKGROUND

In the early hours of May 26, 2013, Plaintiff was struck by a United States Postal Service van driven by Deidre Stoddard. Dkt. #22-1. The collision took place at or near the intersection of International Boulevard and South 188th Street in SeaTac, Washington. Dkt. #22 at ¶ 3. Plaintiff was injured, suffering a broken left hip. Dkt. #24-1 at 18.

ORDER – 1

At the time of the incident, Ms. Stoddard was nearing the end of her work day and was returning to her work facility, turning left onto northbound International Boulevard from eastbound South 188th Street. Dkt. #18-1 at 5, 7. The intersection was not overly dark and was fairly well lit as "it's a major intersection" and "[t]here's a lot of street lights there." *Id.* at 8. Ms. Stoddard just missed the protected left turn and had to sit for a full light cycle. *Id.* at 7. While waiting, she observed a group of people cross west to east over International Boulevard to the north of South 188th Street and outside of the crosswalk. *Id.* at 10. Prior to making her turn, she also noticed a car on westbound South 188th Street waiting to make a right-hand turn onto International Boulevard. *Id.* at 7. Upon having a left turn arrow, Ms. Stoddard did not observe any pedestrians in the area, checked the traffic, began her left turn, saw her lane was clear, and glanced back to the car waiting on westbound South 188th Street. *Id.* at 7–8. When Ms. Stoddard looked back to her path of travel, "there was someone in front of my vehicle." *Id.* 11. Ms. Stoddard swerved to the right, "brushed" Plaintiff, saw in her rearview mirror that Plaintiff had fallen in the inside lane of north International Boulevard, stopped, and observed Plaintiff lying 10-20 feet north of the crosswalk in the inside lane on north International Boulevard. *Id.* at 12. Ms. Stoddard went to help Plaintiff and later observed that her vehicle's left front turn signal and light cover were broken. *Id.* at 13–14. Ms. Stoddard maintains that Plaintiff "absolutely" was not in the crosswalk at the time of collision. *Id.* at 16.

Plaintiff, 60 years old at the time, was just beginning her day and was walking to work from her apartment. Dkt. #18-2 at 4. It was still dark out and she was wearing a green hooded jacket and black pants. *Id.* at 3–5. She was not late and was walking from her apartment on the south side of South 188th Street to SeaTac airport. Dkt. #24-1 at 8–9. Plaintiff walked west to the southeast corner of the intersection of South 188th Street and International Boulevard and

ORDER – 2

crossed north to the northeast corner of the intersection. *Id.* at 15–17. From there, Plaintiff intended to cross west over International Boulevard to the northwest corner of the intersection.[1] *Id.* Plaintiff indicates that she "always" pushes the button to activate the pedestrian "walk signal" and doesn't cross except for when she has a walk signal. Dkt. #18-2 at 6–7. However, Plaintiff does not recall if she hit the button that night or if she had a walk signal when she began crossing International Boulevard. *Id.* Plaintiff began crossing International Boulevard within the crosswalk, moving at a normal speed. Dkt. #24-1 at 10. Plaintiff was almost to the median dividing the northbound and southbound lanes of International Boulevard when she was struck. *Id.* at 12. Plaintiff did not see the Postal Service vehicle until "[i]t was already there" and "didn't notice it before." *Id.* at 11–12. Plaintiff testifies that she was in the crosswalk and moving at a normal speed the entire time she was crossing International Boulevard prior to the collision. *Id.* During the collision, Plaintiff was "pushed away a bit from the" crosswalk. *Id.* at 13.

Defendant seeks summary judgment on the basis that its driver owed Plaintiff no duty of care as she was crossing against a "do not walk signal," was outside of the crosswalk, and did not yield to Defendant's vehicle and further because Defendant did not have an opportunity to see Plaintiff and Plaintiff should have avoided the collision. Dkts. #17, 25. While noting that Plaintiff's testimony is contrary to its evidence, Defendant characterizes Plaintiff's evidence as "blatantly contradicted" and "improbable." Dkt. #17 at 3.

---

[1] The record is not clear as to whether Plaintiff always takes this route to get to work or whether she crossed South 188th Street during the light cycle immediately prior to the accident—*i.e.* while Ms. Stoddard waited. However, these are inferences that a finder of fact could draw and will be considered here. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir.2004).

ORDER – 3

## III. DISCUSSION

### A. Standard of Review for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir.2004). However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 251. The non-moving party must make a "sufficient showing on [each] essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Federal Tort Claims Act

The United States has waived its sovereign immunity and accepted liability "in the same manner and to the same extent as a private individual under like circumstance." 28 U.S.C. § 2674. Likewise, the U.S. District Courts are provided exclusive jurisdiction over actions for damages "caused by the negligent or wrongful act or omission of any employee of the

ORDER – 4

Government while acting within the scope" of employment. 28 U.S.C. § 1346(b)(1). The action must arise "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* Resultantly, the United States' liability is determined by state law, while procedural matters are governed by federal law. *See Liebsack v. United States*, 731 F.3d 850, 855 (9th Cir.2013).

### C. Washington Negligence Law

In Washington, common law negligence "is the failure to exercise reasonable or ordinary care" and ordinary care is "that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances or conditions." *Woodward v. Taylor*, 184 Wash.2d 911, 366 P.3d 432, 436 (2016) (quoting *Gordon v. Deer Park Sch. Dist. No. 414*, 71 Wash.2d 119, 426 P.2d 824, 826 (1967)). Additionally, the Washington Legislature can define a statutory "duty that is additional to, and different from, the duty to exercise ordinary care." *Mathis v. Ammons*, 84 Wash. App. 411, 928 P.2d 431, 434 (1996). The Legislature has enacted statutory duties, but has mandated that "[a] breach of a duty imposed by statute . . . shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence." RCW 5.40.050.

Both Plaintiff and Defendant point to statutory duties, "rules of the road," to support their arguments. RCW 46.61.050(1) (pedestrian shall obey traffic control devices); RCW 46.61.240(1) (pedestrian crossing outside of crosswalk shall yield right-of-way to vehicles); RCW 46.61.240(4) (pedestrian shall only cross within crosswalk between adjacent intersections with traffic-control signals);[2] RCW 46.61.235(1) (vehicle shall stop to allow pedestrian in

---

[2] On the record, the Defendant does not even establish that RCW 46.61.240(4) applies. Defendant does not establish, and the record does not support, that the alleged location at which Plaintiff was crossing was "[b]etween adjacent intersections at which traffic-control signals are in operation."

ORDER – 5

crosswalk to cross) RCW 46.61.245 (notwithstanding pedestrians' duties, "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway"). But, "a trial judge [cannot] find negligence as a matter of law merely because a statutory duty was violated without excuse or justification; rather, he or she must determine whether, in light of all the facts and circumstances of the case, reasonable minds could differ on whether the defendant used ordinary care." *Mathis*, 928 P.2d at 435.

Importantly, Washington is also a contributory fault state. RCW 4.22.005 ("any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery"). "Whether there has been negligence or comparative negligence is a jury question, unless the facts are such that all reasonable persons must draw the same conclusion from them, in which event the question is one of law for the courts." *Hough v. Ballard*, 108 Wash. App. 272, 31 P.3d 6, 10 (2001) (citing *Shook v. Bristow*, 41 Wash.2d 623, 250 P.2d 946, 947 (1952)). As noted above, the determination is whether, "in light of all the facts and circumstances of the case, reasonable minds could differ on whether the defendant [and plaintiff] used ordinary care." *Mathis*, 928 P.2d at 435.

### D. Summary Judgment Is Not Appropriate

Genuine disputes as to material facts preclude the Court from determining the statutory duties upon Plaintiff and Defendant, much less determining that Defendant is not liable as a matter of law. The applicable statutory obligations in this case change and shift depending on when Plaintiff entered the intersection, whether she had a walk signal, whether she was within the crosswalk, whether Ms. Stoddard exercised due care, whether Plaintiff was there to be seen, and whether Plaintiff exercised due care for her own safety. Further, the Washington Legislature

ORDER – 6

has provided that violation these statutory duties are merely evidence of whether a party breached its common law duty to act as an ordinarily careful and prudent person would under the same or similar circumstances or conditions. *Woodward*, 366 P.3d at 436. Summary judgment is not appropriate in this case.

Foremost, the parties dispute whether Plaintiff was within the crosswalk at the time of the collision. Defendant attempts to prove to the Court, on summary judgment, that Plaintiff was not within the crosswalk. Ms. Stoddard testifies that Plaintiff was "absolutely" outside of the crosswalk because Ms. Stoddard "was well past the crosswalk when the collision occurred." Dkt. #18-1 at 16. Defendant bolsters Ms. Stoddard's testimony with testimony of a witness, Mr. Hall. Mr. Hall was the driver of a truck following the Postal Service van and testifies similarly with Ms. Stoddard that he saw "no one in the crosswalk" and that after the van completed the left turn "a woman came out of the brush and ran in front of the Postal Service van." Dkt. #20 at ¶¶ 4–5. But this testimony directly conflicts with Plaintiff's testimony that she was crossing within the crosswalk. Dkt. #24-1 at 10–12. A jury could reasonably choose to believe either scenario.

Defendant attempts to tip the scale with the testimony of two experts.[3] Ashley Giesa, a mechanical engineer, reviewed pictures taken on the night of the incident and visited the scene. Dkt. #19. Ms. Giesa opines that the location of crash debris, photographed in the area where Plaintiff came to rest, was at least 10 feet from the crosswalk. Dkt. #19 at ¶ 13. From this, and without providing any basis, Ms. Giesa concludes that Plaintiff was crossing at least 10 feet from the crosswalk. Dkt. #19 at ¶ 14. Peggy Shibata, a biomechanical and mechanical engineer, opines that the nature of the crash reduced the likely "throw distance" and that the final point of

---

[3] Defendant also relies on the report of a police officer who arrived after the collision and had no personal knowledge of where the collision took place.

ORDER – 7

rest was "in the same vicinity" as the collision. Dkt. #21. Ms. Shibata does not quantify "vicinity" and a jury could conclude that 10 feet is in the same vicinity.

Despite Defendant's contention, this evidence does not blatantly contradict Plaintiff's. Plaintiff testified that she was "pushed away a bit from the" crosswalk during the collision. Dkt. #24-1 at 13. Similarly, Mr. Hall testifies that Plaintiff was "clipped . . . and rolled to the side."[4] Dkt. #20 at ¶ 6. Ms. Stoddard testified that Plaintiff "was standing as my vehicle passed . . . and she . . . would have lost her balance." Dkt. #18-1 at 13. A jury could reasonably conclude that Plaintiff came to rest 10 feet from the point where the collision occurred.

The parties also dispute whether Plaintiff was crossing against the walk signal. Defendant's expert, Ms. Giesa, inspected and reviewed traffic signal sequence and timing for the intersection and concluded that: "Plaintiff would not have had a walk signal while" Ms. Stoddard had a green left turn arrow. Dkt. #19 at ¶ 9. This opinion stops short of establishing that Plaintiff did not have a walk signal when she entered the intersection.[5] Plaintiff testified that her habit is to "always" activate the walk signal and that her habit is to not cross unless she has a walk signal.[6]

---

[4] The Court also notes that Mr. Hall's testimony conflicts with Ms. Shibata's conclusion that Plaintiff had no injuries consistent with her body "rolling across the roadway." Dkt. #21 at ¶ 12.

[5] Mr. Hall's testimony supports this conclusion, but conflicts with Plaintiff's in other regards, specifically whether she was running or walking, and a finder of fact could find him not credible.

[6] The Court entirely discounts Plaintiff's unsupported argument that she "had to have left the curb before Ms. Stoddard's light turned green." Plaintiff makes several unsupported assertions in her Response. *See e.g.* Dkt. #23 at 8 (unsupported facts arguing that if Mr. Hall is believed, the point of impact was more than 10 feet from crosswalk); *Id.* at 9 (rebutting Mr. Hall's testimony that Plaintiff came out of the brush by asserting, without support, that she "was not in that parking lot"). These unsupported allegations, as contrasted by Plaintiff's own testimony, are the type that do not create a genuine dispute as to a material fact. Genuine disputes "requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (1999).

ORDER – 8

Dkt. #18-2 at 6–7. Indeed, as Defendant notes, Plaintiff testified at the time of the accident that the signal changed when she was halfway through the crosswalk.[7] Dkt. #17 at 19.

The parties also genuinely dispute whether Plaintiff was running at the time of the collision. Plaintiff testifies that she was walking at a normal speed. Dkt. #24-1 at 12. Mr. Hall testifies that Plaintiff "came out of the brush and ran in front of the Postal Service van." Dkt. #20 at ¶ 5.

The record likewise demonstrates a genuine dispute as to whether Plaintiff should have seen the vehicle and whether Ms. Stoddard should have seen Plaintiff before the collision. Ms. Giesa determined that "it would have taken Ms. Stoddard approximately 7.7 seconds to travel to the point of the impact on International Boulevard." Dkt. #19 at ¶ 15. Ms. Shibata identifies general factors (lighting, contrast, conspicuity) explaining that humans generally have more difficulty seeing at night. Dkt. #21 at ¶¶ 13–18. Ms. Shibata explains that her opinion provides "an explanation for why Ms. Stoddard did not perceive Plaintiff in advance of her appearing 'in front of her vehicle.'" Dkt. #21 at ¶¶ 14–18.

Of note, part of Ms. Shibata's explanation is that "before and during [Ms. Stoddard's] left turn, her attention was somewhat directed toward the westbound vehicle making a right onto northbound International Blvd." *Id.* at 17. Indeed, Ms. Stoddard testified that she looked away from the crosswalk as she "was nearly completed with [her] turn" and did not look back until she was "well past the crosswalk." Dkt. #18-1 at 7–8, 16. This is the case even though Ms. Stoddard had just observed "a group of people that crossed . . . not in a crosswalk, and ran across the street." Dkt. #18-1 at 10.

---

[7] Though this statement may be hearsay, the Court will consider it as the Defendant brought it to the Court's attention. Dkt. #17 at 19; Dkt. #25 at 9. Further, the fact that Plaintiff now does not remember whether she had a walk signal does not conflict with her earlier statement.

ORDER – 9

Another part of Ms. Shibata's possible explanation was that Plaintiff's dark clothing may not have contrasted with a "dark background." *Id.* No evidence establishes the "background" and Ms. Stoddard in fact indicated that the intersection was fairly well lit and that there are "a lot of street lights there." Dkt. #18-1 at 8.

In sum, Ms. Shibata provides "<u>an explanation</u> for why Ms. Stoddard did not perceive Plaintiff." Dkt. #21 at ¶ 18 (emphasis added). Ms. Shibata does not testify that Ms. Stoddard, exercising due care, could not have seen Plaintiff.

The numerous genuine disputes as to material facts go directly to determining applicable statutory obligations and whether they were violated—themselves only evidence of negligence. On a motion for summary judgment, the Court is not permitted to weigh the evidence or make credibility determinations as these responsibilities belong to the finder of fact. *Anderson*, 477 U.S. at 249–50. Even if the Court could, both Plaintiff and Defendant had the duty to act reasonably and with ordinary care. *Woodward*, 366 P.3d at 436. Further, Washington law is clear that a driver approaching a crosswalk has a duty of continuous observation and that a pedestrian, whether in the crosswalk or not, also must exercise reasonable care for her own safety. *Pudmaroff v. Allen*, 138 Wn.2d 55, 977 P.2d 574, 580 (1999). "The interaction between [a car and a pedestrian] involves location, direction, movement, conditions, obstructions, actions, observations, and numerous other inferences that may have brought about a crash" and "must be assessed by the jury unless the evidence permits no inference of negligence on the part of one party or on the part of the other." *Hough,* 31 P.3d at 11 (2001) (quoting *Harris v. Burnett*, 12 Wash. App. 833, 532 P.2d 1165, 1168 (1975)).

ORDER – 10

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS that Defendant's Motion for Summary Judgment (Dkt. #17) is DENIED. The Court will address, by separate order, the parties' stipulated motion to extend pretrial dates.

DATED this 12th day of March 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE