UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDITHA DAMASCO,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendants.

CASE NO. C17-641 RSM

PRETRIAL ORDER

## I.    JURISDICTION

Jurisdiction is vested in this Court by virtue of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2679(b)(1). The United States has waived sovereign immunity for the negligent or wrongful acts or omissions of any federal employee acting within the scope of employment, under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §§ 1346(b). The parties agree that Washington substantive law applies to this case.

## II.    CLAIMS AND DEFENSES

A. At trial, Plaintiff intends to pursue relief in the form of damages sustained by Plaintiff in the amount of $800,200.00, including past and future medical expenses and

other health care expenses, pain and suffering, both mental and physical, past and future permanent partial disability and disfigurement, loss of enjoyment of life, damages to property, past and future special damages, and exemplary and other damages.

B. The Defendant will pursue the following defenses and/or claims for relief to Plaintiff's negligence claim:

1. Plaintiff cannot meet her burden of proof to establish negligence by the United States because:

    a. The government driver complied with any duty owed to Plaintiff by waiting to turn left onto International Boulevard until the protected left turn signal was illuminated, checking to ensure the turning lane was clear before proceeding, and exercising the care expected of a reasonably prudent driver in similar circumstances.

    b. Plaintiff appeared suddenly in the street and was not seen or able to be seen by the government driver, or by an eyewitness following the government vehicle through the turn, until immediately before the collision.

2. Plaintiff failed to comply with her duty to obey the Do Not Walk signal and yield the right-of-way to vehicles turning northbound onto International Boulevard during a protected left turn signal.

3. Plaintiff failed to comply with her duty to yield the right-of-way to all vehicles upon the roadway when crossing outside of a marked crosswalk.

4. Plaintiff's injury was caused by her own negligence in crossing the street against a protected left turn signal and while the Do Not Walk signal was illuminated.

5. Plaintiff's injury was caused by her own negligence in crossing the street at least ten feet outside of the crosswalk.

6. Plaintiff failed to exercise ordinary care for her own safety when crossing the street by failing to obey the Do Not Walk signal, failing to use the crosswalk, failing to yield the right-of-way to the government vehicle, and failing to see the government vehicle in the seven seconds it took the vehicle to travel from its stopped position to the point of impact.

7. If the Court finds that the government employee was negligent—a claim which the United States specifically denies—Plaintiff's recovery, if any, should be reduced in proportion to her contributory fault (*see* RCW 4.22.005) for the reasons enumerated above.

8. Plaintiff failed to mitigate her damages by refusing to fully participate in her recommended physical therapy and discontinuing physical therapy before it was complete.

9. Plaintiff failed to mitigate her damages by timely seeking treatment for ongoing pain in her hip, waiting only a few weeks before trial to seek treatment when she knew or reasonably should have known of the need for treatment at least six months earlier, if not more.

### III. ADMITTED FACTS

The following facts are admitted by the parties:

1. The intersection of S. 188th Street and International Boulevard in SeaTac, Washington is controlled by four traffic signals and four traffic control devices; one for each direction of travel through the intersection.

2. There are four crosswalks at this intersection, one for each direction of travel through the intersection.

3. There is a crosswalk on the north side of International Boulevard at S. 188th Street, which is controlled by a traffic control device ("walk signal").

4. There is a prompt button on the north side of International Boulevard at S. 188th Street that must be pressed in order to obtain a walk signal.

5. The next intersection to the north of International Boulevard at S. 188th Street is S. 184th Street, which is controlled by traffic signals and has three crosswalks, one in each direction, except the north side.

6. The traffic signals, traffic control devices, and crosswalks at the intersection of S. 188th Street and International Boulevard are substantially the same today as they were on May 26, 2013.

7. On May 26, 2013, Plaintiff was 60 years old.

8. On May 26, 2013 at approximately 3:45 a.m., Plaintiff was crossing International Boulevard on the north side of the intersection with S. 188th Street in SeaTac, Washington.

9. On May 26, 2013 at approximately 3:45 a.m., Deidre Stoddard was driving a United States Postal Service vehicle and was acting within the scope and course of her employment for the United States Postal Service.

10. The United States Postal Service vehicle was a 1998 Ford Windstar minivan.

11. On May 26, 2013 at approximately 3:45 a.m., Ms. Stoddard was traveling eastbound on S. 188th Street in SeaTac, Washington, and stopped at a traffic signal while waiting to make a left turn onto northbound International Boulevard.

12. Ms. Stoddard was first in line waiting to turn left onto northbound International Boulevard.

13. Ms. Stoddard just missed the protected left turn arrow and had to wait through the traffic signal sequence before obtaining the next protected left turn arrow.

14. On May 26, 2013 at approximately 3:45 a.m., Bradley Hall was driving a semi-tractor trailer for Blue Tick Trucking, LLC, and was immediately behind the Postal Service vehicle in the left turn lane on S. 188th Street.

15. When the protected left turn arrow illuminated for eastbound S. 188th Street, Ms. Stoddard proceeded to turn left onto northbound International Boulevard.

16. Mr. Hall followed Ms. Stoddard's vehicle through the protected left turn arrow, turning left onto northbound International Boulevard.

17. At some point during or immediately following the protected left turn, the Postal Service vehicle made contact with Plaintiff.

18. The contact between the vehicle and Plaintiff was at the front left corner (driver's side) of the vehicle.

19. The contact occurred in the western lane of northbound International Boulevard.

20. Ms. Stoddard stopped the Postal Service vehicle in the right lane of northbound International Boulevard, past the point of contact, and immediately returned to attend to Plaintiff.

21. Mr. Hall stopped his semi-tractor trailer behind the Postal Service vehicle and the trailer section of his vehicle was parked in the north crosswalk on International Boulevard.

22. Officer Michael Yamamoto of the SeaTac Police Department was dispatched to the scene at 3:49 a.m. and arrived at approximately 3:57 a.m.

23. Plaintiff was transported to Highline Medical Center by emergency response personnel.

24. Plaintiff was examined by medical personnel and diagnosed with left hip fractures and a mild scalp hematoma with superficial erosion in the left parietal region.

25. Dr. William Clark performed a three-screw fixation surgery on May 27, 2013 to repair the hip fractures.

26. Plaintiff remained at Highline Medical Center until June 3, 2013, when she was transferred to Avalon Healthcare, Inc., a rehabilitation facility for recovery and was released on July 2, 2013.

27. On May 26, 2013, Plaintiff was employed full-time by Concessions International, LLC, and part-time by Host International, Inc.

28. Plaintiff was cleared by Dr. Clark to return to work on August 20, 2013.

29. Plaintiff resigned her position with Host International, Inc. on or about August 21, 2013.

## IV. ISSUES OF LAW

**A. Plaintiff submits the following are issues of law to be determined by the Court:**

1. Did Ms. Stoddard have a duty to yield the right-of-way to pedestrians in the crosswalk at the time of the incident?

2. Did Ms. Stoddard have a duty to exercise reasonable care to avoid striking pedestrians crossing the roadway at the time of the incident?

3. Did Ms. Stoddard, as the driver of a vehicle approaching a crosswalk, have a duty of continuous observation at the time of the incident?

4. Did Ms. Stoddard have a duty to see what would be seen by a person exercising ordinary care at the time of the incident?

5. Did Ms. Stoddard have the right to assume others will exercise ordinary care, and did she have a right to proceed on such assumption until she knew, or in the exercise of ordinary care, should have known, to the contrary?

6. Has Plaintiff proved by a preponderance of the evidence that the United States breached a duty owed to Plaintiff at the time of the incident on May 26, 2013?

7. Has the United States proved by a preponderance of the evidence that Plaintiff acted, or failed to act, in one of the ways claimed by the United States, and that in so acting or failing to act, Plaintiff was negligent?

8. Has the United States proved by a preponderance of the evidence that the negligence of Plaintiff was a proximate cause of Plaintiff's own injuries and was therefore contributory negligence?

9. If the United States has proved by a preponderance of the evidence that Plaintiff was contributorily negligent, what percentage of negligence is attributable to Plaintiff's actions?

10. Has Plaintiff proved by a preponderance of the evidence that she suffered an injury on May 26, 2013?

11. Has Plaintiff proved by a preponderance of the evidence that the United States' breach of a duty of care owed to her on May 26, 2013 was a proximate cause of her injury?

12. Was Plaintiff's negligence the only proximate cause of her injury?

13. Was there more than one proximate cause of Plaintiff's injury?

14. Were Plaintiff's economic damages of medical expenses, lost earnings and cost to replace damaged clothing and other property objectively verifiable monetary losses?

15. If the United States is found to be negligent to any degree for Plaintiff's injuries, has Plaintiff shown that she has suffered subjective, nonmonetary losses, including, but not limited to, pain, suffering, mental anguish, partial disability and emotional distress?

16. Has the United States satisfied its burden of proof with respect to each of the affirmative defenses it claims?

**B.  Defendant submits the following are issues of law to be determined by the Court:**

1. Has Plaintiff proven by a preponderance of the evidence that the United States breached a duty of care owed to Plaintiff at the time of the incident on May 26, 2013?

2. If the Court finds the United States was negligent in one or more ways alleged by Plaintiff, has Plaintiff proven by a preponderance of the evidence that such negligence proximately caused her injury?

3. Has the United States proven by a preponderance of the evidence that Plaintiff failed to comply with her duty to obey a Do Not Walk traffic signal?

4. Has the United States proven by a preponderance of the evidence that Plaintiff failed to comply with her duty to yield the right-of-way to all vehicles upon the roadway when crossing outside of a marked crosswalk.

5. Has the United States proven by a preponderance of the evidence that Plaintiff failed to exercise ordinary care for her own safety when crossing the street?

6. If the Court finds that the United States was negligent, has the United States proven by a preponderance of the evidence that Plaintiff's own negligence proximately caused and/or contributed to her injury in this case?

    a. If yes, what percentage of negligence is attributable to Plaintiff's actions?

7. Has the United States proven by a preponderance of the evidence that Plaintiff failed to mitigate her damages in one or more of the ways alleged by the United States?

## V. EXPERT WITNESSES AND HEALTH CARE PROVIDERS

A. The names and addresses of the expert witnesses and health care providers to be used by each party at the trial and the issue upon which each will testify is:

1. The following health care provider will be presented by deposition testimony on behalf of Plaintiff:

    a. **William L. Clark, M.D.**
        Southwest Seattle Orthopaedics and Medicine
        16259 Sylvester Road SW, Suite 501
        Burien, WA 98166-3059

Dr. Clark is an orthopedic surgeon who treated Plaintiff following the accident with the USPS vehicle by performing surgery on Plaintiff's hip and will testify as to Plaintiff's injuries, treatment, current medical condition and prognosis as it related to her injuries and need for future medical care.

2. The following expert witnesses will be presented by deposition testimony on behalf of the United States:

    a. **Michael Battaglia, M.D.**
        Bellevue Bone & Joint Physicians
        1427 116th Avenue NE
        Bellevue, WA 98004
        (425) 462-9800

1   Dr. Battaglia is an orthopedic surgeon who conducted an independent medical
2   examination of Plaintiff and will provide expert opinions as to Plaintiff's current medical
3   condition and prognosis as it relates to her claimed injuries and need for future medical
4   care.

   3.   The following witnesses may be presented live or by deposition testimony, depending on the outcome of pending motions to be determined by the Court at the pretrial hearing on June 18, 2018:

   a.   **Ashley Giesa, P.E.**
        Engineering Systems, Inc.
        700 S. Industrial Way
        Seattle, WA 98108
        (206) 622-2007

   Ms. Giesa is a professional mechanical engineer who conducted an accident reconstruction investigation. She will provide expert opinions as to the location of the accident and the traffic signal timing at the incident location.

   b.   **Peggy Shibata, P.E.**
        Engineering Systems, Inc.
        1174 Oak Valley Drive
        Ann Arbor, MI 48108
        (734) 794-8102

   Ms. Shibata is a professional mechanical engineer who conducted a human factors and injury analysis of the accident and Plaintiff's claimed injuries. Ms. Shibata will provide expert opinions as to the nature and mechanism of Plaintiff's claimed injuries.

   4.   The following expert witness may be called to testify live on behalf of the United States:

   a.   **Eric Knowles, M.B.A.**
        The Knowles Group
        120 W. Dayton Street, Ste. B9
        Edmonds, WA 98020
        (206) 860-9477

Mr. Knowles is a forensic economist who has conducted a forensic review of Plaintiff's wage and earnings history and claims of lost earnings capacity. He may provide expert testimony as to Plaintiff's past wage loss and past/future earnings capacity.

## VI. OTHER WITNESSES

The names and addresses of witnesses, other than experts and health care providers, to be used by each party at the time of trial and the general nature of the testimony of each are:

A. On behalf of Plaintiff:

1. **Editha Damasco** – Will testify
c/o David Zielke, Counsel for Plaintiff

Ms. Damasco is the Plaintiff in this matter and will testify as to the facts and circumstances surrounding the incident that is the subject of this litigation, including but not limited to how she came to be in the roadway at the time of the incident, where she was located before, during and after the incident, her past and current employment, and medical history, including claimed injuries and actions in the course of treatment for those injuries.

2. **Marciana Ibarra** – Will testify
c/o David Zielke, Counsel for Plaintiff

Ms. Ibarra is Plaintiff's roommate and was her roommate at the time of the incident and will testify as to the routes Plaintiff took to work, how they chose those routes and what Plaintiff told her about the accident the next day.

3. **Lorna Farina** – Possible witness only
c/o David Zielke, Counsel

Ms. Farina is Plaintiff's relative and will testify as to Plaintiff's character and to her pain and suffering following the accident.

B. On behalf of Defendant:

1. **Editha Damasco** – Possible witness only
   c/o David Zielke, Counsel for Plaintiff

Ms. Damasco is the Plaintiff in this matter and may be called by the United States to testify as to the facts and circumstances surrounding the incident that is the subject of this litigation, including but not limited to how she came to be in the roadway at the time of the incident, where she was located before, during and after the incident, her past and current employment, and medical history, including claimed injuries and actions in the course of treatment for those injuries.

2. **Deidre Stoddard** – Will testify
   c/o Tricia Boerger, Counsel for the United States

Ms. Stoddard was the driver of the United States Postal Service vehicle involved in the incident that is the subject of this litigation. She will be called to testify as to the facts and circumstances surrounding the incident that is the subject of this litigation, including but not limited to her actions before, during and after the incident, her observations of the scene and of Plaintiff's actions before, during and after the incident.

3. **Bradley Hall** – Will testify
   7284 E. Collins Road
   Port Orchard, Washington 98366
   (360) 509-7026

Mr. Hall was the driver of a Blue Tick Trucking, LLC semi-tractor trailer and was following immediately behind Ms. Stoddard's vehicle at the time of the incident making a left turn onto northbound International Boulevard. Mr. Hall will be called to testify as to the facts and circumstances surrounding the incident that is the subject of this litigation, including but not limited to his actions before, during and after the incident, his observations of the scene and of Plaintiff's actions before, during and after the incident.

4. **Deputy Michael Yamamoto** – Will testify
   SeaTac Police Department
   4800 S. 188th Street

SeaTac, Washington 98188
(206) 973-4900

Deputy Yamamoto was the responding officer on scene and prepared a Washington Police Traffic Report. He took statements from witnesses at the scene, including Ms. Stoddard, Mr. Hall and Plaintiff. He will be called to testify as to his observations of the scene and the facts and circumstances of the incident and/or those reflected in his police report of the incident.

## VII. EXHIBITS

A. **Admissibility stipulated**:

**Plaintiff's Exhibits:**

P-1. Curriculum Vitae of William D. Clark, M.D.

P-2. Dictation and Reports re Editha Damasco dated May 26, 2013 and Following

P-3. Imaging Reports re Editha Damasco

P-4. E. Melnic Admission Report re Editha Damasco to Highline Medical Center dated May 26, 2013

P-5. A. Kalyanasundaram Consultation Report re Editha Damasco dated May 31, 2013 Concerning Atrial Fibrillation

P-6. Diagram Titled "Anatomy of the Hip"

P-7. Dictation and Reports re Editha Damasco dated May 7, 2018

P-8. Health Insurance Claim Form – TriMed Ambulance (Damasco_Plaintiff 0000271)

P-9. Invoice and Billing Detail – Highline Medical Center (Damasco_Plaintiff 0000272-0000280)

P-10. Health Insurance Claim Form – Highline Emergency (Damasco_Plaintiff 0000281)

| | |
|---|---|
| 1 | P-11. Health Insurance Claim Form – IRAD Medical Imaging PC (Damasco_Plaintiff 0000282-0000283) |
| 2 | |
| 3 | P-12. Billing Detail – South Sound Inpatient (Damasco_Plaintiff 0000284-0000286) |
| 4 | |
| 5 | P-13. Health Insurance Claim Form and Billing Detail – Proliance Surgeons Inc PS (Damasco_Plaintiff 0000287-0000293) |
| 6 | |
| 7 | P-14. Health Insurance Claim Form – Seattle Anesthesia Services PC (Damasco_Plaintiff 0000294) |
| 8 | |
| 9 | P-15. Billing Detail – Avalon Care Center (Damasco_Plaintiff 0000295-0000295) |
| 10 | |
| 11 | P-16. Health Insurance Claim Form – Buenaventura, Julio F. (Damasco_Plaintiff 0000297) |
| 12 | |
| 13 | P-17. Statement – PACLAB (Damasco_Plaintiff 0000298-0000299) |
| 14 | |
| 15 | P-18. Statement – Seattle Heart and Vascular (Damasco_Plaintiff 0000302-0000303) |
| 16 | |
| 17 | P-19. Billing Detail – Family Medical Clinic (Damasco_Plaintiff 0000272-0000280) |
| 18 | |
| 19 | P-20. Billing Detail – Apple Physical Therapy (Damasco_Plaintiff 0000304-0000307) |
| 20 | |
| 21 | P-22. Aerial View No. 1 - The Intersection: International Boulevard and S. 188th Street, SeaTac, WA |
| 22 | |
| 23 | P-23. Aerial View No. 2 – The Intersection: International Boulevard and S. 188th Street, SeaTac, WA |
| 24 | |
| 25 | P-24. Aerial View No. 3 - The Intersection: International Boulevard and S. 188th Street, SeaTac, WA |
| 26 | |
| 27 | P-25. Street View –The Intersection: Daylight (View North) International Boulevard and S. 188th Street, SeaTac, WA |
| 28 | |

P-26. Street View –The Intersection: Night (View North) International Boulevard and S. 188th Street, SeaTac, WA

P-27. Documents in Support of Damages, Losses, Expenses, and/or Costs Incurred (Damasco_Plaintiff 0000308-401)

P-28. Plaintiff's Tax Returns-2012 (Damasco_Plaintiff 0000402-407)

P-29. Avalon Care Center Records (Damasco_MedRecs 0000403-592)

P-31. State of Washington Police Traffic Collision Report

**Defendant's Exhibits:**

A-1. Investigative Report, Peggy Shibata, P.E. with curriculum vitae and testimony history, except such of its content that is excluded pursuant to an order of the Court.

A-2. List of Literature References, Peggy Shibata, P.E.

A-3. Aerial map of roadway and area of incident

A-4. Aerial view of subject intersection

A-5. Photograph of subject vehicle – 1998 Ford Windstar minivan

A-6. Scaled diagram of subject pedestrian and subject vehicle – side view

A-7. Scaled diagram of subject pedestrian and subject vehicle – front view

A-8. Scaled 3-D diagram of subject pedestrian and subject vehicle – angle view

A-13. Investigative Report, Ashley Giesa, P.E., with curriculum vitae, testimony history and fee schedule, except such of its content that is excluded pursuant to an order of the Court

A-14. Aerial map of subject intersection expanded to show adjacent intersection

A-15. Photograph of scene, enlarged Figure 4 from Giesa Report

A-17. Photograph of scene, enlarged Figure 7 from Giesa Report

A-18. Photograph of scene showing stairs near Doubletree Hotel

A-19. Photograph of scene showing different angle of stairs near Doubletree Hotel

A-20. Diagram of distance from stop line on S. 188th St. to point of impact

A-21. Chart of pedestrian foot speed calculations

A-22. Diagram showing distance per rate of travel across subject intersection

A-23. Diagram showing distance of stairs near Doubletree Hotel from crosswalk

A-24. (for identification) Traffic signal sequencing for subject intersection

A-25. (for identification) Event log for traffic signal for subject intersection

A-26. Statement of Bradley Hall (Damasco_USA_000339)

A-27. Curriculum vitae, testimony history, and fee schedule of Michael Battaglia, II, M.D.

A-28. Updated testimony history and fee schedule of Michael Battaglia, II, M.D.

A-29. Report of Michael Battaglia, II, M.D.

A-30. Article, Robertson, William J., et al., "Anatomy and Dimensions of the Gluteus Medius Tendon Insertion," *Anthroscopy: The Journal of Anthroscopic and Related Surgery*, Vol. 24, No. 2 (Feb. 2008), pp. 130-36.

A-31. Article, Dwek, Jerry, et al., "MR Imaging of the Hip Abductors: Normal Anatomy and Commonly Encountered Pahtology at the Greater Trochanter," *Magn Reson Imaging Clin N Am*, 13 (2005) pp. 691-704.

A-32. Article, Davies, Hywel, et al., "Surgical repair of chronic tears of the hip abductor mechanism," *Hip International*, Vol 19, No. 4 (2009).

A-33. Diagram, greater trochanter

A-34. Plaintiff's tax returns 2011-2016 (Damasco_USA_000392-432)

B. **Authenticity stipulated, admissibility disputed:**

**Plaintiff's Exhibits**

P-21.  Summary of Medical Costs by Provider

P-30.  Calculation of Past Wage Loss

P-32.  Report of the Knowles Group dated November 28, 2017

**Defendant's Exhibits:**

A-1. Investigative Report, Peggy Shibata, P.E. to the extent its content is excluded pursuant to an order of the Court.

A-9. Diagram of impact sequence for forward projection-type collision

A-10. Diagram of impact sequence for fender vault-type collision

A-11. Diagram of typical passenger vehicle headlamp distribution

A-12. Diagram of headlamp distribution and need for contrast

A-13. Investigative Report, Ashley Giesa, P.E. to the extent its content is excluded pursuant to an order of the Court

A-16. Photograph of scene showing debris field (Damasco_USA_000381)

C. **Authenticity and admissibility disputed:**

**Plaintiff's Exhibits**:

None

**Defendant's Exhibits:**

None.

## VIII. ACTION BY THE COURT

This case is scheduled for a bench trial on June 27, 2018.

Trial briefs, proposed findings of fact and conclusions of law, and designation of deposition testimony pursuant to LCR 32(e) shall be submitted to the Court on or before June 20, 2018.

This order has been approved by the parties as evidenced by the signatures of their counsel. This order shall control the subsequent course of the action unless modified by a subsequent order. This order shall not be amended except by order of the Court pursuant to agreement of the parties or to prevent manifest injustice.

DATED this 20th day of June 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

PRESENTED BY:

ANNETTE L. HAYES
United States Attorney

*s/ David H. Zielke*
DAVID H. ZIELKE, WSBA #36494
The Law Firm of David H. Zielke, PS
2122 112th Ave. NE, Suite A-300
Bellevue, WA 98004
Telephone: (425) 202-7743
Fax: (425) 202-7742
Email: david@zielkelawfirm.com

*s/ Tricia Boerger*
TRICIA BOERGER, WSBA #38581
Assistant United States Attorney
Western District of Washington
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Email: tricia.boerger@usdoj.gov

Pretrial Order
Damasco v. United States
C17-641 RSM - 17